**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

GRO MASTER, INC., a Kentucky
corporation,

        Plaintiff,

vs.

FARMWELD, INC., an Illinois
corporation,

        Defendant.

No. C 12-4096-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT'S
MOTION TO DISMISS OR
TRANSFER**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**...........................................................................3
    A.    *Factual Background* .............................................................3
    B.    *Procedural Background* .........................................................4

II.    **LEGAL ANALYSIS** ...................................................................6
    A.    *Personal Jurisdiction* ...........................................................6
        1.    *Arguments of the parties*..............................................6
        2.    *Analysis* ..................................................................8
            a.    *Controlling precedent* ........................................8
            b.    *Applicable standards* .........................................8
            c.    *Application of the standards* ................................11
                i.    *"General" jurisdiction* ..................................11
                ii.    *"Specific" jurisdiction* ..................................11
        3.    *Summary*.................................................................17
    B.    *Improper Venue*.................................................................17
        1.    *Arguments of the parties*..............................................17
        2.    *Analysis* .................................................................18
            a.    *Controlling precedent* .......................................18
            b.    *Venue pursuant to § 1400(b)* ................................21
                 i.    *The place of infringement and the
                      defendant's place of business* .........................22

            *ii.*     *The place where the defendant "resides"* ........... *22*
        *c.*    *Summary* ......................................................... *26*
  *C.*    *Inconvenient Venue* ....................................................... *26*
      *1.*    *Arguments of the parties* ............................................. *27*
      *2.*    *Analysis* ................................................................ *29*
        *a.*    *Transfer pursuant to § 1406* .................................. *29*
        *b.*    *Transfer pursuant to § 1404(a)* .............................. *30*
      *3.*    *Summary* ............................................................... *34*

*III.*   *CONCLUSION* ............................................................. *34*

An out-of-state corporation has brought this action for infringement of its patent for an "animal feeder with adjustment of a feed discharge opening" against another out-of-state corporation that allegedly manufactures and sells an infringing animal feeder. The defendant has moved to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, for transfer of the action to an appropriate venue. The plaintiff patentholder hangs its contention that personal jurisdiction and venue are proper in this district on the defendant's attendance as an exhibitor at the World Pork Expo in Des Moines, Iowa, in June 2012, its advertisement of its animal feeder in a national magazine, and its sale of a single animal feeder to a customer in Iowa. This case gives off a whiff of forum shopping nearly as potent as the odor emanating from a hog confinement facility.

## I.     INTRODUCTION

### A.     Factual Background

In its Complaint (docket no. 2), plaintiff Gro Master, Inc., alleges that it is a Kentucky corporation with its principal place of business in Omaha, Nebraska.  Gro Master alleges that it is the owner of United States Patent No. 6,923,142 (the '142 patent), issued August 2, 2005, entitled "ANIMAL FEEDER WITH ADJUSTMENT OF A FEED DISCHARGE OPENING."  Gro Master also alleges that defendant Farmweld, Inc., is an Illinois corporation with its principal place of business in Teutopolis, Illinois; that Farmweld is selling and offering for sale animal feeders covered by the '142 patent in Iowa and this judicial district and throughout the United States, without an express or implied license; and that, by doing so, Farmweld is willfully infringing the '142 patent.

In a Declaration (docket no. 19-2), filed in support of Farmweld's Motion To Dismiss Or, Alternatively, Motion To Transfer Venue (docket no. 19), Francis A. Brummer, the chief executive officer of Farmweld, admits that Farmweld is an Illinois corporation with its principal place of business in Teutopolis, Illinois.  He avers that Farmweld is registered to do business in Illinois, but not Iowa; that Farmweld does not maintain any offices, employees, or telephone listings in Iowa; that all of Farmweld's employees are located in Teutopolis, with the exception of a single employee located in Minnesota; that Farmweld does not pay taxes or maintain any bank accounts in Iowa; that Farmweld does not advertise in the yellow pages in Iowa; and that Farmweld does not own any real or personal property in Iowa.

Mr. Brummer also avers that the animal feeder that is presumably the subject of Gro Master's Complaint was developed in Teutopolis, Illinois, not in Iowa, and that all marketing and sales decisions related to the product were made at its offices in Teutopolis.  He avers, further, that Farmweld began selling the animal feeder that is

3

presumably the subject of Gro Master's Complaint in January 2012, that it has received orders for 632 such feeders, but that it has sold only one such animal feeder to a customer in Iowa.  He also avers that it is his "understanding" that the Iowa customer has a "relationship" with Gro Master, which Gro Master does not deny.  In comparison to the single sale to a customer in Iowa, Mr. Bummer avers that 592 of its animal feeders at issue have been sold to Illinois customers, and that the remaining feeders have been sold to customers in Indiana (8), Michigan (5), Mexico (22), Missouri (2), Minnesota (1), and Canada (1).  Finally, Mr. Brummer avers that Gro Master's website indicates that it has four dealers in Illinois.

In a Declaration, filed in support of Gro Master's Resistance (docket no. 21), Marvin Wastel, the president and co-owner of Gro Master, avers, *inter alia*,

> 5.     I attended the World Pork Expo held in Des Moines, Iowa, during June 6-8, 2012.  Farmweld had a booth at World Pork Expo and displayed a shelf feeder which I believe infringes one or more claims of the ['142 patent].  Farmweld also had printed materials at its booth which illustrated the shelf feeder and which described the features of the shelf feeder.
>
> 6.     Farmweld advertised its accused infringing shelf feeder in the September 15, 2012, magazine entitled *National Hog Farmer* which is a national publication.

Declaration Of Marvin Wastel, ¶¶ 5-6.

## B.     Procedural Background

In its Complaint, filed October 22, 2012, Gro Master asserts a claim of patent infringement against Farmweld.  As relief, it seeks judgment that the '142 patent is valid and enforceable and that Farmweld is willfully infringing it; a permanent injunction enjoining Farmweld's infringement of the '142 patent, whether direct,

contributory, or induced; an award of damages to compensate it for Farmweld's infringement, in no less than a reasonable royalty for use of its invention, with interest and costs; double or treble damages for willful infringement; attorneys' fees; and such other relief as the court and/or the jury may deem proper.

Instead of filing an Answer to Gro Master's Complaint, Farmweld filed, on December 3, 2012, the Motion To Dismiss Or, Alternatively, Motion To Transfer Venue (docket no. 19) that is now before me.[1]   In its Motion, Farmweld seeks dismissal of Gro Master's Complaint for lack of personal jurisdiction and for improper venue, pursuant to Rule 12(b)(2) and Rule 12(b)(3) of the Federal Rules of Civil Procedure, respectively.   In the alternative, Farmweld requests that I transfer this action pursuant to 28 U.S.C. §§ 1404 or 1406 to the Southern District Of Illinois, a forum in which Farmweld alleges that both personal jurisdiction and venue are proper. Gro Master filed a Resistance (docket no. 21) to Farmweld's Motion on December 11, 2012, and Farmweld filed a Reply (docket no. 22) in further support of its Motion on

---

[1] On January 4, 2013, Gro Master filed a Motion For Summary Judgment Of Patent Infringement (docket no. 23).  On January 17, 2013, Farmweld filed a Motion To Deny Without Prejudice Plaintiff's Motion For Summary Judgment, Or In The Alternative To Delay Defendant's Deadline To Respond (docket no. 24), which, among other things, includes a request for discovery and a delay of 120 days from the date of my ruling on personal jurisdiction and venue for Farmweld to respond to the Motion For Summary Judgment.  I agree with Farmweld that it is inappropriate for me to consider Gro Master's Motion For Summary Judgment until I have determined whether personal jurisdiction and venue are proper in this district.  If I dismiss this action, doing so will moot the Motion For Summary Judgment.  If I only transfer this action to another district, it would be appropriate for the court in the transferee district to consider both Gro Master's Motion For Summary Judgment and Farmweld's Motion To Deny Without Prejudice Plaintiff's Motion For Summary Judgment, Or In The Alternative To Delay Defendant's Deadline To Respond.  Only if I determine that personal jurisdiction and venue are proper in this district will I consider either motion relating to summary judgment.

December 20, 2012.   No party requested jurisdictional discovery or an evidentiary hearing on the jurisdiction and venue issues.

I do not believe that oral arguments on Farmweld's Motion are likely to be beneficial, where the parties have submitted adequate briefs and affidavits in support of their positions.   Moreover, my crowded schedule does not permit the timely scheduling of oral arguments.   Therefore, Farmweld's Motion is deemed fully submitted on the written submissions.

## II.   LEGAL ANALYSIS

In its Motion, Farmweld challenges both personal jurisdiction and venue. Although personal jurisdiction and venue are interrelated questions in this case, I find that they involve sufficiently distinct issues that I should analyze them separately.

### A.   Personal Jurisdiction

#### 1.   Arguments of the parties

Farmweld contends that it does not have the minimum contacts with Iowa that would sustain either "general" or "specific" personal jurisdiction over it in this forum. Farmweld contends that, even if Gro Master is only required to make a *prima facie* showing of personal jurisdiction at this point in the proceedings, that *prima facie* showing must be tested in light of facts shown by affidavits and exhibits, as well as factual allegations in the Complaint.   Farmweld argues that, in this case, Gro Master has not met its burden, because Farmweld is not registered to do business in Iowa, does not maintain offices in Iowa, and does not own any real or personal property in Iowa; because Farmweld has received only one order for the accused animal feeder from a single customer located in Iowa, constituting less than 0.16% of the total orders that it has received for that product; and because Iowa has no interest in providing a forum in

this case, where neither party is an Iowa resident and no actions giving rise to Gro Master's patent infringement claim occurred in Iowa.

Gro Master contends that this court does have personal jurisdiction over Farmweld, because the Federal Circuit Court of Appeals, the court stating controlling law on the personal jurisdiction issue in this patent case, has held that federal district courts do have personal jurisdiction over out-of-state defendants who appear at a trade show in the district, citing *Patent Rights Protection Group, L.L.C. v. Video Gaming Technologies, Inc.*, 603 F.3d 1364 (Fed. Cir. 2010).   Here, Gro Master contends, Farmweld's representatives appeared at the World Pork Expo in Des Moines, Iowa, on June 6 through 8, 2012, where they displayed the accused animal feeder and distributed printed materials to attendees that illustrated the accused animal feeder.   Gro Master argues that, in addition, Farmweld has advertised the accused animal feeder in the September 15, 2012, issue of *National Hog Farmer*, a national publication, and Farmweld admits that it has sold an accused animal feeder to an Iowa customer, although there is no identification of the specific location of the Iowa customer.   Gro Master argues that these actions establish the necessary minimum contacts for personal jurisdiction over Farmweld.   Gro Master argues that other factors do not weigh against the reasonableness of the exercise of personal jurisdiction over Farmweld in this district, because the burden of defending the suit in Iowa rather than Illinois, will not be significant, while Gro Master has an interest in obtaining convenient and effective relief, which it can do more efficiently in this forum from its base in Omaha, Nebraska, just 90 miles from Sioux City, Iowa.

In reply, Farmweld distinguishes the *Patent Rights* case on which Gro Master relies on the grounds that the defendants in that case attended *numerous* trade shows in Nevada, not just one, like Farmweld, and the plaintiff in that case was a Nevada company, which gave the Nevada court a "manifest interest" in providing a convenient

forum for redressing injuries inflicted by out-of-state actors, but Gro Master is not an Iowa company, either.  Moreover, Farmweld argues that the burden on it of litigating in Iowa clearly outweighs Gro Master's interest in adjudicating the dispute in Iowa. Farmweld also contends that courts have held that an advertisement in a nationally distributed publication is not enough to support the exercise of personal jurisdiction in any particular forum.  Thus, Farmweld contends that this court does not have personal jurisdiction over it.

### 2.    Analysis

#### a.    Controlling precedent

Gro Master is correct that Federal Circuit law is applicable to the question of personal jurisdiction in this case.  *See Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) ("'[W]e apply Federal Circuit law because the jurisdictional issue is "intimately involved with the substance of the patent laws."'" (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008), in turn quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)); *Merial, Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012) ("We review a district court's exercise of personal jurisdiction over an accused infringer without deference, applying Federal Circuit law rather than the law of the regional circuit.").  Therefore, I will apply Federal Circuit law to the personal jurisdiction question presented in Farmweld's Motion.

#### b.    Applicable standards

As the Federal Circuit Court of Appeals has explained, where, as here, the court makes a determination on a question of personal jurisdiction without a request by the parties to conduct discovery or to hold an evidentiary hearing on the question, "plaintiffs need only show a *prima facie* case of personal jurisdiction."  *Grober*, 686 F.3d at 1345; *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1017

(Fed. Cir. 2009).  In resolving such a question on this procedural footing, however, the court is not limited to consideration of facts alleged in the Complaint, but may also consider affidavits and other written materials in the absence of an evidentiary hearing. *Autogenomics*, 566 F.3d at 1017; *Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).  Even though the information that a district court may consider is broader than it is on a Rule 12(b)(6) motion to dismiss, "a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Electronics for Imaging*, 340 F.3d at 1349.   The Federal Circuit Court of Appeals reviews a determination of personal jurisdiction "without deference," but reviews any underlying factual determinations for "clear error." *Grober*, 686 F.3d at 1345.

Turning to specific standards for determining whether the exercise of personal jurisdiction is proper, "[i]n general, a federal district court may exercise personal jurisdiction over a non-consenting out-of-state defendant if two requirements are satisfied":  (1) "the defendant must be amenable to service of process," which requires examination of the forum state's long-arm statute; and (2) "exercising jurisdiction over the defendant must comport with due process." *Patent Rights Protection Group*, 603 F.3d at 1368; *accord AFTG-TG, L.L.C. v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012); *Grober*, 686 F.3d at 1345.  Iowa's long-arm statute[2] "expands Iowa's

---

[2] Iowa's long-arm statute is actually set forth in two places:  IOWA CODE § 617.3 and Rule 1.306 of the Iowa Rules of Civil Procedure.  Section 617.3 provides for the service of "foreign corporations or nonresidents contracting or committing torts in Iowa," IOWA CODE § 617.3 (2006), and Rule 1.306 provides for an "[a]lternative method of service" that applies to "every corporation, individual, personal representative, partnership or association," IOWA R. CIV. P. 1.306.  Rule 1.306 is the provision that specifically extends Iowa's jurisdictional reach to federal constitutional limits.  *See Hammond*, 695 N.W.2d at 5; *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980) (noting that Iowa Rule of Civil Procedure 56.2 (now Rule 1.306), "unlike

jurisdictional reach to the widest due process parameters allowed by the United States Constitution." *Hammond v. Florida Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (discussing Rule 1.306 of the Iowa Rules of Civil Procedure). In these circumstances, the first requirement for personal jurisdiction collapses into the second. *AFTG-TG, L.L.C. v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012); *Grober*, 686 F.3d at 1345. Consequently, I turn to the second question, whether exercising personal jurisdiction over Farmweld comports with due process. *Grober*, 686 F.3d at 1345; *Patent Rights Protection Group*, 603 F.3d at 1368.

As every law student knows—and most practicing lawyers and judges still remember—there are two types of personal jurisdiction, "general" and "specific," that comport with due process. *AFTG-TG*, 689 F.3d at 1360; *Grober*, 686 F.3d at 1345. "General" personal jurisdiction requires "'continuous and systematic general business contacts'" with the forum, such that haling the defendant into court on any claim satisfies due process. *See, e.g., Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). In contrast,

> "[s]pecific jurisdiction … must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Autogenomics*, 566 F.3d at 1017 (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)). When analyzing specific personal jurisdiction over a nonresident defendant, a court considers whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Elecs. For Imaging*, 340 F.3d at 1350. The

---

Iowa's older 'long-arm' statute, section 617.3, . . . expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution").

plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable. *Id.* As this court previously explained "[t]he first two factors correspond with the 'minimum contacts' prong of the *International Shoe [v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. [v. Kuzmak]*, 249 F.3d [1356,] 1360 [(Fed. Cir. 2001)].

*Grober*, 686 F.3d at 1346; *accord AFTG-TG*, 689 F.3d at 1361.

### c.  *Application of the standards*

#### i.  *"General" jurisdiction*

In this case, I do not read any part of Gro Master's Complaint or Resistance to assert that Farmweld has "continuous and systematic" contacts with Iowa, such that "general" personal jurisdiction applies. *Id.* If Gro Master did intend to assert "general" personal jurisdiction, the undisputed averments in Mr. Brummer's Declaration about Farmweld's lack of offices, property, and routine business contacts with Iowa demonstrate that Farmweld does not have the "'continuous and systematic general business contacts'" with the forum that would warrant haling the defendant into court on any claim. *Radio Sys. Corp.*, 638 F.3d at 789 (quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416). Thus, I pass on to whether "specific" jurisdiction applies in this case. *AFTG-TG*, 689 F.3d at 1360.

#### ii.  *"Specific" jurisdiction*

Gro Master's contention that, in *Patent Rights Protection Group, L.L.C. v. Video Gaming Technologies, Inc.*, 603 F.3d 1364 (Fed. Cir. 2010), the Federal Circuit Court of Appeals held that federal district courts have personal jurisdiction over out-of-state defendants who appear at a trade show in the district does not bear scrutiny. First, in that case, "instead of determining whether either [defendant] had such

11

minimum contacts with Nevada [as would satisfy due process], the district court evaluated only whether exercising personal jurisdiction over either [defendant] should be defeated as being unreasonable, applying the seven-factor test set out [in Ninth Circuit precedent]." *Id*. at 1369-70. Thus, the reference to appearances at trade shows was only pursuant to the last "fairness" prong of the "specific" personal jurisdiction analysis set out in Federal Circuit cases, not pursuant to the "minimum contacts" prongs of that analysis. *Grober*, 686 F.3d at 1346. Moreover, in that case, the court did not hold that a single trade show appearance by a defendant in a patent infringement action was sufficient to establish "specific" personal jurisdiction, it held that the admitted presence of *both* defendants at "*numerous* trade shows in Nevada indicate[d] that . . . neither company faced a particularly onerous burden in defending itself in Nevada." *Patent Rights*, 603 F.3d at 1370. Thus, *Patent Rights* is distinguishable factually from this case, in which Farmweld only appeared at a *single* trade show in Iowa.

Gro Master's assertion of "specific" personal jurisdiction in this case becomes even less convincing when I consider the first two prongs of the "specific" personal jurisdiction analysis, which the district court in *Patent Rights* had failed to do. *Id*. at 1369-70. First, considering all three of Farmweld's alleged contacts with Iowa—exhibition of the accused animal feeder at the trade show in Des Moines, advertisement of the accused animal feeder in a national publication, and sale of a single accused animal feeder to a customer in Iowa—separately or together, those contacts are insufficient to show that Farmweld "purposefully directed its activities at residents of the forum state," here, Iowa. *Grober*, 686 F.3d at 1346 (first prong of the analysis).

More specifically, in *Grober*, the court rejected a contention that *repeated* appearances at trade shows in a particular forum were sufficient to support "general" personal jurisdiction, because "this showing does not rise above a sporadic and

12

insubstantial contact with [the forum]," then also rejected a contention that the court had "specific" personal jurisdiction over the same defendant in the circumstances presented, albeit without specific reference to appearances at trade shows.  *Id.*  In *Medical Solutions, Inc. v. C Change Surgical, L.L.C.*, 541 F.3d 1136 (Fed. Cir. 2008), where the court expressly considered an appearance at a trade show in the context of its "specific" jurisdiction analysis, the court rejected the contention that display of the allegedly infringing product at a trade show, without more, constituted "use" under the Patent Act that would support "specific" personal jurisdiction.  541 F.3d at 1140-41. In *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com De Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009), the court found "personal jurisdiction" over a Brazilian defendant that had appeared at a single trade show in the United States.  563 F.3d at 1298.  It did so, however, on the basis that attendance at a single trade show in the United States *together with other deliberate contacts with the United States* constituted sufficient contacts to establish that the Brazilian defendant purposely availed itself of the United States.  *Id.*  Thus, even *Synthes* does not stand for the proposition that a single appearance at a trade show is sufficient to establish the minimum contacts required for the proper exercise of "specific" personal jurisdiction.  In short, a single appearance at a trade show is not enough to support "specific" personal jurisdiction, but is merely an insubstantial contact with the forum.

Similarly, a defendant's publications in a national publication—even a publication based in the forum state—is not enough to establish "specific" jurisdiction. *Grober*, 686 F.3d at 1347 (citing, *inter alia*, *Cascade Corp. v. Hiab–Foco AB*, 619 F.2d 36, 37–38 (9th Cir. 1980), as finding that an advertisement in a national publication available in the forum state did not establish specific jurisdiction); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 857-58 (Fed. Cir. 1999) (rejecting evidence that the defendant solicited sales through national publications, but had only

very limited sales of accused ovens in Iowa, as evidence of contacts insufficient in nature and quality to warrant the exercise of personal jurisdiction in Iowa). Also, a single sale of an accused product in Iowa is insufficient contact, particularly when Farmweld made hundreds of sales in another forum (Illinois). *AFTG-TG*, 689 F.3d at 1366-67 (concluding, after reviewing precedents, that a single sale in the forum state did not establish personal jurisdiction in that forum). These separately insufficient contacts do not, in this case, make a whole that is greater than the sum of its parts sufficient to satisfy due process.

Similarly, consideration of the second prong in the analysis, that "the claim arises out of or relates to the defendant's activities with the forum state," *see Grober*, 686 F.3d at 1346, also leads to the conclusion that "specific" personal jurisdiction over Farmweld does not exist in this forum. Again, the defendant's appearance at a single trade show, an advertisement in a nationally distributed publication, and a single sale of the accused product to a customer in Iowa, establish, at best, only a very attenuated relationship between Iowa and the claim of patent infringement. This is particularly true, where Farmweld contends, and Gro Master does not dispute, that all design and manufacture and the vast majority of the sales of the accused product occurred in Illinois, and Gro Master is, itself, an out-of-state corporation, and Gro Master does not allege that the invention, design, or manufacture of the patented product occurred in this forum.

Even were I convinced—and I definitely am not—that the first two prongs in the "specific" personal jurisdiction analysis warranted the exercise of personal jurisdiction over Farmweld in this case, the final prong, whether "assertion of personal jurisdiction is reasonable and fair," *id.*, plainly shows that the exercise of personal jurisdiction in this forum is not appropriate. To put it another way, Farmweld's showing that it is not reasonable and fair to exercise personal jurisdiction over it in this forum is compelling

enough to justify ignoring Gro Master's choice of forum.  *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (noting that the burden on the party challenging personal jurisdiction is to make a "compelling" showing on this prong, where that party's minimum contacts otherwise support the exercise of personal jurisdiction in the forum selected by the plaintiff).

The specific question is whether this case presents the ""rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.""  *Id.* (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995), in turn quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)).  As the court explained in *Patent Rights*,

> Factors relevant to this inquiry may include the following:
>
> > [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.
>
> [*Burger King Corp. v. Rudzewicz*, 471 U.S. 462,] 476-77, 105 S.Ct. 2174 [(1985)] (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1985)) (internal quotation marks omitted).

*Patent Rights*, 603 F.3d at 1369.  In this case, *all* of the factors identified weigh heavily *against* the exercise of personal jurisdiction over Farmweld in this district.

First, the burden on Farmweld is significant.  *Id.*  While the court in *Patent Rights* observed that, "'[b]ecause modern transportation and communications have made it much less burdensome for a party sued to defend [itself]' outside its home state," *id.* (quoting *Burger King*, 471 U.S. at 474), and it concluded that "defending

15

this suit in Nevada is not prohibitively burdensome for either [defendant]," it so concluded, because of the defendants' "admitted presence at *numerous* trade shows in Nevada," which the court held "indicate[d] that, despite their arguments to the contrary, neither company faces a particularly onerous burden in defending itself in Nevada." *Id.* (emphasis added).  As noted above, the evidence here is that Farmweld appeared only at a *single* trade show in Iowa, which provides little or no indication of the burdens it would face in *defending a lawsuit* in Iowa.  Where Farmweld's contacts with this forum are attenuated, at best, the burdens of litigating here, away from its base of operations and all of its relevant witnesses and documents, is very heavy. Second, as to the interest of the forum in adjudicating the dispute, *id.*, as Farmweld also points out, in *Patent Rights*, the court agreed that Nevada had an interest in litigation by a Nevada company attempting to protect its patent rights, among other factors.  *See id.* at 1370.  This case is distinguishable, however, because *neither* Gro Master *nor* Farmweld is an Iowa corporation.  The decision in *Patent Rights* cannot be read to support the exercise of "specific" personal jurisdiction over a defendant who appeared at a single trade show in a forum in which the plaintiff patentholder was also an out-of-state corporation.  Third, while I must consider "the plaintiff's interest in obtaining convenient and effective relief," *id.* at 1369, I cannot see that this forum is significantly more convenient than an Illinois forum, in which Gro Master also does business, and it is likely that any relief against Farmweld would be much more effective in a forum in which Farmweld has property and other assets and conducts a substantial part of the allegedly infringing activity.  Finally, neither "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" nor "the shared interest of the several States in furthering fundamental substantive social policies," *id.*, are well served by litigation in a forum that is foreign to both parties, particularly where other, more appropriate fora are also available

There is, consequently, no sound basis for this court to assert "specific" personal jurisdiction over Farmweld.

### 3.    *Summary*

Farmweld's December 3, 2012, Motion To Dismiss Or, Alternatively, Motion To Transfer Venue (docket no. 19) will be granted as to dismissal for lack of personal jurisdiction, pursuant to Rule 12(b)(2), because this court has neither "general" nor "specific" personal jurisdiction over Farmweld.

## B.    *Improper Venue*

In addition, or in the alternative, I will consider whether or not to grant Farmweld's request to dismiss this action for improper venue, pursuant to Rule 12(b)(3). Consideration of that part of Farmweld's motion begins with a summary of the parties' arguments pertinent to the venue issue.

### 1.    *Arguments of the parties*

Farmweld argues that Gro Master cannot meet its burden to show that venue is proper under any subdivision of 28 U.S.C. § 1391(b). First, Farmweld argues that venue is not proper under § 1391(b)(1), because Farmweld does not "reside" in this district, but in Illinois. Second, Farmweld argues that venue is not proper under § 1391(b)(2), because Gro Master's claims arise from the design, marketing, and sale of a product, but Gro Master does not allege that the accused animal feeder was designed or developed in Iowa; a single sale of the accused animal feeder in Iowa does not constitute a "substantial part" of the events giving rise to Gro Master's suit; and Gro Master has not alleged any other connection between Farmweld and Iowa. Third, Farmweld argues that venue is not proper under § 1391(b)(3), because Farmweld may not be "found" in the Northern District of Iowa, but may be "found" in the Southern District of Illinois.

Gro Master contends that Farmweld has overlooked § 1391(c), which it contends is the "general corporate venue statute." Gro Master contends that, pursuant to that provision, a defendant "resides," and venue is proper, in any district where there would be personal jurisdiction over the defendant at the time that the action is commenced. Gro Master contends that, because this court has personal jurisdiction over Farmweld, venue is also proper in this district.

In reply, Farmweld asserts that, even if § 1391(c) determines its "residency," because it is not subject to personal jurisdiction in Iowa, venue is not proper in this district pursuant to § 1391(b)(1). Farmweld also points out that Gro Master has not alleged that a substantial part of the events or omissions giving rise to its claim occurred in this district, so that venue is not proper pursuant to § 1391(b)(2), and because there are other judicial districts in which this action can be brought, venue is not proper in this district pursuant to § 1391(b)(3).

2.   *Analysis*

a.   *Controlling precedent*

The Federal Circuit Court of Appeals has made clear that questions of personal jurisdiction in patent infringement cases are determined according to the law of the Federal Circuit Court of Appeals, *see, supra*, page 8, and that, in patent cases, "[i]n reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a) [for convenience of the parties], we apply the law of the regional circuit," *see In re Link_A_Media Devices Corp.*, 662 F.3d 1221. 1222-23 (Fed. Cir. 2011). In contrast, I cannot find any express statement by the Federal Circuit Court of Appeals about whether a Rule 12(b)(3) motion to dismiss for improper venue is controlled by the law of the regional circuit or the law of the Federal Circuit. The reason for this becomes obvious, however, when one recognizes—as neither of the parties in this case have done—that venue in a patent case is defined by a separate, special venue statute, 28

18

U.S.C. § 1400(b), not—at least in the first instance—by any provision of 28 U.S.C. § 1391.  Indeed, the parties need not have looked any further than the *Patent Rights* case on which Gro Master relied for its untenable personal jurisdiction argument for hints that the applicable venue statute is § 1400(b).  *See* 603 F.3d at 1367 (noting that the defendant argued that venue in the District of Nevada did not satisfy the requirements of § 1400(b), although the court did not reach the venue question).

Section 1400(b) provides as follows:

> **(b)** Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b).  By its plain terms, this statue applies specifically to patent infringement actions.  *See Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("Venue in patent infringement trials is proper in any judicial district 'where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business.'" (quoting 28 U.S.C. § 1400(b)); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 1990) ((noting that "§ 1391(c) is a general venue statute and that § 1400(b) is a specific one" for venue in patent infringement actions).

As the Federal Circuit Court of Appeals noted more than two decades ago, in *VE Holding Corporation*,

> As written, section 1400(b) dictates that venue is proper when either of two tests is satisfied: (1) the defendant resides in the judicial district, or (2) the defendant has committed acts of infringement and has a regular and established place of business in the judicial district.

*VE Holding Corp.*, 917 F.2d at 1577-78.  As the court also recognized, however, the meaning of "resides" in § 1400(b) is defined by § 1391(c):

19

> Section 1391(c) . . . now ha[s] exact and classic language of
> incorporation: "For purposes of venue under this
> chapter. . . ." Congress could readily have added "except
> for section 1400(b)," if that exception, which we can
> presume was well known to the Congress, was intended to
> be maintained. Certainly it would not be sensible to require
> Congress to say, "For purposes of this chapter, *and we
> mean everything in this chapter* . . .," in order to ensure that
> it has covered everything in a chapter of the statutes.

*VE Holding Corp.*, 917 F.2d at 1579 (emphasis in the original). Furthermore, "[t]he
phrase 'this chapter' refers to chapter 87 of title 28, which encompasses §§ 1391-1412,
and thus includes § 1400(b)." *Id.* at 1578. Thus, the court concluded, "On its face,
§ 1391(c) clearly applies to § 1400(b), and thus redefines the meaning of the term
'resides' in that section." *Id.* If anything, the language of incorporation is even
broader in the current version of § 1391(c), which states "For *all* venue purposes . . .,"
28 U.S.C. § 1391(c) (2011) (emphasis added), not just "For purposes of this
chapter . . .," as did the version of the statute at issue in *VE Holding Corporation*.

The court in *VE Holding Corporation* then reasoned,

> [T]he general rule that a specific statute is not controlled or
> nullified by a general statute regardless of priority of
> enactment, absent a clear intention otherwise, does not
> govern the present situation. This is for two reasons. First,
> in this case the general statute, § 1391(c), expressly reads
> itself into the specific statute, § 1400(b). Second, § 1391(c)
> only operates to define a term in § 1400(b)—it neither alone
> governs patent venue nor establishes a patent venue rule
> separate and apart from that provided under § 1400(b). Nor
> does it conflict with § 1400(b). Furthermore, even were the
> rule applicable to the issue at hand, the language of the
> statute would reveal "a clear intention" that § 1391(c) is to
> supplement § 1400(b).

*VE Holding Corp.*, 917 F.2d at 1580 (footnotes omitted). The court found no
congressional intent or legislative history contrary to this reading of the two statutes.

*Id.* at 1580-82.   Nor could the court conclude that the impact of its reading was so unlikely that it could not be what Congress intended.  *Id.* at 1582-83.  Indeed, the court concluded that this reading brought "the law of venue in patent cases more in line with venue law generally, as well as with other types of patent litigation."  *Id.* at 1583-84. As to the case before it, the court concluded that "the first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced," and where the defendant had conceded that the plaintiff's chosen forum had personal jurisdiction, the defendant "resided" in that district within the meaning of § 1400(b), and venue was proper in that district.  *Id.* at 1584.

It is in this context that one must read subsequent statements by the Federal Circuit Court of Appeals that "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction."  *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (citing *VE Holding Corp.*, 917 F.2d at 1583, and *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1306 (Fed. Cir. 1999)).

### b.      *Venue pursuant to § 1400(b)*

Again, § 1400(b) provides that there are two tests for venue in patent infringement actions:   (1) the defendant resides in the judicial district, or (2) the defendant has committed acts of infringement and has a regular and established place of business in the judicial district.  *VE Holding Corp.*, 917 F.2d at 1577-78.  I will begin with the latter test, if only to make abundantly clear that it is not met in this case, where the parties failed to consider it at all.

### i.    The place of infringement and the defendant's place of business

As to the "place of infringement and place of business" test in § 1400(b), I have considerable doubt that appearing and displaying the accused animal feeder at a trade show, advertising the accused animal feeder in a national publication, and a single sale of the accused animal feeder to a customer in Iowa constituted "acts of infringement." *See, e.g., Medical Solutions, Inc.*, 541 F.3d at 1140-41 (rejecting the contention that display of the allegedly infringing product at a trade show, without more, constituted "use" under the Patent Act); *Grober*, 686 F.3d at 1347 (holding that a defendant's publications in a national publication—even a publication based in the forum state—is not a "contact" with a "specific" forum). More importantly, however, the display of the accused animal feeder at a trade show did not occur in *this* judicial district. *See* 28 U.S.C. § 1400(b); *VE Holding Corp.*, 917 F.2d at 1577-78. Des Moines, Iowa, where the World Pork Expo took place in June 2012, is in the *Southern* District of Iowa, not the *Northern* District of Iowa. I also cannot tell whether the single sale of the accused animal feeder to an Iowa customer was in the *Northern* or the *Southern* District of Iowa, because the specific location of the Iowa customer does not appear in any of the information currently in the record. Finally, Gro Master does not contend, and I certainly could not find in light of Mr. Brummer's Declaration, that the Northern District of Iowa is a district in which Farmweld "has a regular and established place of business." 28 U.S.C. § 1400(b); *VE Holding Corp.*, 917 F.3d at 1577-78. Thus, venue is not appropriate in this district under this test for venue in a patent infringement action under § 1400(b).

### ii.   The place where the defendant "resides"

As to the first test of venue under § 1400(b), the question is whether the defendant "resides" in this judicial district. *See* 28 U.S.C. § 1400(b); *VE Holding*

*Corp.*, 917 F.2d at 1577-78.   The parties clearly contest whether or not Farmweld "resides" in this district.

As noted above, the Federal Circuit Court of Appeals held in *VE Holding Corporation* that § 1391(c), which defines "residency," applies to § 1400(b). 917 F.2d at 1580.   Subsection 1391(c)(2), in turn, provides, in pertinent part, as follows:

> (c) **Residency.**—For all venue purposes—
>
> * * *
>
> **(2)** an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .

28 U.S.C. § 1391(c)(2) (emphasis added).   This provision does equate personal jurisdiction with proper venue, as Gro Master contends.   Nevertheless, I cannot conclude that Farmweld "resides" in this district, *see* 28 U.S.C. § 1400(b); *VE Holding Corp.*, 917 F.2d at 1577-78, even if I am wrong in my conclusion, above, that dismissal for lack of personal jurisdiction is appropriate, and, instead, personal jurisdiction is proper in this district.   *But see Trintec Indus., Inc.*, 395 F.3d at 1280 (stating that "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction").   This conclusion is dictated by the analysis of the applicability of § 1391(c) in *VE Holding Corporation*.

Just as § 1391(c) is expressly incorporated into § 1400(b), because § 1391(c) now includes the language "For all venue purposes . . . ," *see VE Holding Corp.*, 917 F.2d at 1579 (finding incorporation where the statute then read "For purposes of venue under this chapter," which included § 1400(b)), § 1391(d) is also expressly incorporated into § 1400(b), because it includes the same "exact and classic language of

incorporation" noted in *VE Holding Corporation*: "For purposes of venue under this chapter . . . ." 28 U.S.C. § 1391(d). Again, the phrase "this chapter" refers to chapter 87 of title 28, which encompasses §§ 1391-1412, and thus includes § 1400(b). *VE Holding Corp.*, 917 F.2d at 1578. Consequently, on its face, § 1391(d) clearly applies to § 1400(b), and thus redefines the meaning of the term "resides" in § 1400(b). *Id.*

Furthermore, not only does the general statute, § 1391(d), expressly reads itself into the specific statute, § 1400(b), § 1391(d) only operates to define a term in § 1400(b), "resides," but it neither alone governs patent venue, nor establishes a patent venue rule separate and apart from that provided under § 1400(b), nor conflicts with § 1400(b). *Id.* at 1580. Even if the general rule were applicable that a specific statute is not controlled or nullified by a general statute, regardless of priority of enactment, absent a clear intention otherwise, the language of the statute reveals "a clear intention" that § 1391(d) is to supplement § 1400(b). *Id.* Also as in *VE Holding Corporation*, I have found no congressional intent or legislative history contrary to this reading of § 1391(d) and § 1400(b). *Id.* at 1580-82. Nor can I conclude that the impact of this reading is so unlikely that it could not be what Congress intended. *Id.* at 1582-83. To the contrary, this reading brings "the law of venue in patent cases more in line with venue law generally, as well as with other types of patent litigation." *Id.* at 1583-84. Therefore, I conclude that "reside" in § 1400(b) has the same meaning for corporations as "reside" in § 1391(d).

Section 1391(d) provides, as follows:

> **(d) Residency of corporations in States with multiple districts.**—For purposes of venue under this chapter, *in a State which has more than one judicial district* and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to *reside in any district in*

24

> *that State within which its contacts would be sufficient to*
> *subject it to personal jurisdiction if that district were a*
> *separate State*, and, if there is no such district, the
> corporation shall be deemed to reside in the district within
> which it has the most significant contacts.

28 U.S.C. § 1391(d) (emphasis added).  Even if this court has personal jurisdiction over Farmweld, because Farmweld has sufficient minimum contacts with the State of Iowa, venue is not proper in this district, considered as a "separate State," pursuant to this provision, where Iowa has *two* judicial districts—the Northern and the Southern. *Id.*

Again, Des Moines, Iowa, where the World Pork Expo took place in June 2012, is in the *Southern* District of Iowa, not the *Northern* District of Iowa, so Farmweld's appearance at the Expo was not a "contact" with the *Northern* District of Iowa, even if it was a sufficient "contact," either alone or with other "contacts," to establish personal jurisdiction.  *But see Grober*, 686 F.3d at 1346 (concluding that *repeated* appearances at trade shows were not sufficient to establish personal jurisdiction, even with other contacts); *Medical Solutions, Inc.*, 541 F.3d at 1140-41 (a single appearance at a trade show was not "use" of the infringing product to establish "specific" personal jurisdiction); *and compare Synthes*, 563 F.3d at 1298 (a single appearance at a trade show together with other deliberate contacts with the United States showed that the Brazilian defendant purposely availed itself of the United States).  Again, I cannot tell, on the basis of the present record, whether the single sale of the accused animal feeder to an Iowa customer was in the *Northern* or the *Southern* District of Iowa, so that is not established as a "contact" with this district, considering this district as if it were a "separate State," even if that sale were otherwise a sufficient "contact" to establish personal jurisdiction.  *But see AFTG-TG*, 689 F.3d at 1366-67 (concluding, after reviewing precedents, that a single sale in the forum state did not establish personal

jurisdiction in that forum).   Clearly, advertisement in a national publication is not enough to establish personal jurisdiction in this district, considering this district as if it were "a separate State."  *See Grober*, 686 F.3d at 1347 (concluding that a defendant's advertisement in a national publication—even a publication based in the forum state—is not enough to establish "specific" jurisdiction).   Finally, Farmweld does not "reside" in the Northern District of Iowa, even assuming that there is no other district in the State that has personal jurisdiction, because the Northern District of Iowa plainly is not the district in the State with the most significant contacts.  *See* 28 U.S.C. § 1400(b).   That district would be the Southern District of Iowa, because Farmweld appeared at the World Pork Expo in that district in 2012, but has no such contact with the Northern District of Iowa.

Thus, venue is not proper under the "residence" test in § 1400(b), either, because Farmweld does not "reside" in this district.   28 U.S.C. §§ 1400(b), 1391(c), 1391(d).

### c.   Summary

Farmweld's December 3, 2012, Motion To Dismiss Or, Alternatively, Motion To Transfer Venue (docket no. 19) will also be granted as to dismissal for lack of venue, pursuant to Rule 12(b)(2), because Farmweld does not "reside" in this district, nor is this district otherwise the appropriate venue, pursuant to §§ 1400(b), 1391(c), and 1391(d).

## C.   Inconvenient Venue

The last alternative in Farmweld's Motion is a request that I transfer this case to the United States District Court for the Southern District of Illinois, pursuant to either 28 U.S.C. § 1406 or § 1404.   I will consider this alternative, against the contingency that an appellate court might reverse my dismissal of this case for lack of personal jurisdiction and improper venue.

### 1.     *Arguments of the parties*

Farmweld argues that § 1406 allows the court to transfer a case laying venue in the wrong district to a proper district, rather than dismissing it, if doing so is in the interest of justice.  Farmweld argues that the "best" venue to which this case could be transferred is the United States District Court for the Southern District of Illinois, because that is where Farmweld resides and where it developed the accused animal feeder.

As to § 1404(a), Farmweld argues that, even if personal jurisdiction and venue are proper in this district, I should transfer this case to the Southern District of Illinois, for the convenience of the parties and witnesses and in the interest of justice. Farmweld points out that the district it has nominated is one where the action might have been brought, because Farmweld resides there and a substantial part of the case arose there.  Farmweld argues that the circumstances favor a transfer to that district, because Iowa is an inconvenient forum in which to litigate for both parties, as neither party resides here or has its principal place of business here.  In contrast, Farmweld argues, it does reside in the Southern District of Illinois, and Gro Master conducts business there, because it has at least four dealers located in Illinois.  Farmweld also points out that its witnesses are all in Illinois, not Iowa, and Gro Master's witnesses also are not in Iowa, but in Nebraska; the vast majority of Farmweld's allegedly infringing sales occurred in Illinois; and, while Iowa has no interest in deciding this dispute between two out-of-state parties, Illinois does have such an interest, because the "center of gravity" of Gro Master's claims is Illinois.  Under these circumstances, Farmweld also argues that Gro Master's choice of forum is entitled to little weight.

Gro Master opposes transfer of this action, because Gro Master asserts that Farmweld has failed to show that a transfer would serve the convenience of the parties or the interest of justice.  Gro Master argues that its choice of forum should not be

disturbed, unless the balance strongly favors Farmweld's choice, which it argues is not the case here.  Gro Master argues that any federal court can determine the applicable law, federal patent law, and can provide the requested relief in a patent infringement case, and that transferring from this district to the district nominated by Farmweld will simply transfer the inconvenience from one party to the other, or from one party's witnesses to the other's, and that the location of the parties' respective records also is a neutral factor.  Turning to the interest of justice, Gro Master contends that this case could be tried in this district well before it could be tried in the Southern District of Illinois, and that there is simply no compelling reason to transfer this case to the Southern District of Illinois.

In reply, Farmweld argues that the evidence to which Gro Master points actually confirms that a transfer of the case to Illinois is appropriate, because Gro Master actually points only to the inconvenience of a transfer on Gro Master's attorneys and two potential witnesses who do not reside in Iowa.  However, Farmweld argues, convenience of the *attorneys* carries little weight, and there is still not a single potential witness identified for either side who resides in Iowa, while Gro Master's argument suggests that this forum is inconvenient for *all* witnesses.  Farmweld also argues that there is a preference in patent cases for litigating in the location where the accused product was made—in this case, the Southern District of Illinois—because it is the location where the bulk of the relevant evidence usually can be found.  Farmweld also points out that Gro Master has not identified any evidence that this case could be resolved more quickly in this district than in the Southern District of Illinois.  Indeed, Farmweld argues that statistics kept by the Administrative Office of the United States Courts indicates that the Southern District of Illinois actually has a slightly shorter median time from filing to disposition of a case than this district.

28

2.    *Analysis*

a.    *Transfer pursuant to § 1406*

Section 1406(a) provides, as follows:

> **(a)**    The district court of a district in which is filed a case *laying venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a) (emphasis added).    Various federal appellate courts have recognized that the effect of a transfer pursuant to § 1406(a) is to preserve the initial filing date for the purposes of the statute of limitations, at least where the plaintiff's initial choice of venue was in good faith.    *See, e.g., Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-67 (1962); *Lafferty v. St. Riel*, 495 F.3d 72, 79 (3d Cir. 2007) (citing *Goldlawr*, 369 U.S. at 465-67); *Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408, 435-36 (2d Cir. 2005); *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 607–08 (7th Cir. 2003).

If my conclusion that Gro Master has attempted to lay venue in the "wrong district" is itself wrong, then I would never reach the question of transfer pursuant to § 1406(a).    *See* 28 U.S.C. § 1406(a) (transfer is only considered if the action was laid in the "wrong district").    If my conclusion that Gro Master has attempted to lay venue in the "wrong district" is right, I decline to transfer this action to any other district, because the party who would benefit most from preserving this action by transferring, rather than dismissing it, Gro Master, has made no showing that the "interest of justice" would warrant such a transfer.    *See Goldlawr, Inc.*, 369 U.S. at 465-67 (noting that the effect of a § 1406(a) transfer is to preserve a claim for statute of limitations purposes); *Lafferty*, 495 F.3d at 79; *Daniel*, 428 F.3d at 435-36; *Continental Ins. Co.*, 354 F.3d at 607-08.    I am even less inclined to do so, where I believe that there is a

29

strong inference of forum-shopping from Gro Master's attempt to lay venue in a district in which neither party has its principal place of business; from Gro Master's assertions of personal jurisdiction and venue based on plainly untenable arguments, where it is clear that Farmweld has only the most attenuated contacts with this forum and this forum has only the most attenuated relationship to the conduct giving rise to the patent infringement claim; and from the fact that the inconvenience of the forum, in which both parties are strangers, would lay most heavily on Farmweld.

I will not transfer this action pursuant to § 1406.

### b.      Transfer pursuant to § 1404(a)

As noted, above, the Federal Circuit Court of Appeals has made clear that, in patent cases, "[i]n reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a) [for convenience of the parties], we apply the law of the regional circuit." *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011); *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003). Therefore, I will summarize the Eighth Circuit standards for such a transfer.

Section 1404(a) provides, as follows:

> **(a)**      For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The Eighth Circuit Court of Appeals has explained,

> The statute "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." *Van Dusen v. Barrack*, 376 U.S. 612, 634 n. 30, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting Revisor's Note, H.R.Rep. No. 80-308, at A132 (1947), and H.R.Rep. No. 79-2646, at A127 (1946)).   "Congress, in passing § 1404(a), was primarily concerned with the problems arising where,

> despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one." *Id.* at 634, 84 S.Ct. 805.

*In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010).   Thus, where § 1406(a) was enacted to protect a plaintiff who, in good faith, lays venue in the wrong district from the consequences of an untimely refiling in the proper district, *see, e.g., Goldlawr, Inc.*, 369 U.S. at 465-67, it appears that § 1404(a) was enacted to protect a defendant from a technically correct, but nevertheless inconvenient forum.   *In re Apple*, 502 F.3d at 912.

As to the standards applicable to a motion to transfer pursuant to § 1404(a), the court has explained,

> We have declined to offer an "exhaustive list of specific factors to consider" in making the transfer decision, *see Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997), but district courts should weigh any "case-specific factors" relevant to convenience and fairness to determine whether transfer is warranted.   *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Terra Int'l*, 119 F.3d at 691.

*In re Apple, Inc.*, 602 F.3d at 912.   Although the court has not established an "exhaustive list" of factors that are relevant to determination of a motion to transfer, it has recognized various factors as frequently relevant to the "convenience" aspect and the "interest of justice" aspect, respectively.   *Id.* at 913-16; *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) ("The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer:   (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice.").   Nevertheless, the court has not limited factors it will consider to these categories, instead considering any other factors that are relevant on a "case-by-case" basis. *Terra Int'l*, 119 F.3d at 691.

As to the "convenience" aspect, the Eighth Circuit Court of Appeals has identified relevant factors as including the plaintiff's choice of forum; the convenience of the parties, witnesses, and documents; the place where the alleged wrongs occurred; and whether there is a more convenient forum. *Id.* at 913-15; *Terra Int'l*, 119 F.3d at 696 (concluding that the district court properly considered the following "convenience" factors: "(1) the convenience of the parties, (2) the convenience of the witnesses— including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."). Factors that the court has found are frequently relevant to the "interest of justice" issue include the comparative cost of litigation; the plaintiff's ability to enforce a judgment; whether the law of a particular state applies to any claim or claims; judicial economy; and comparative congestion of dockets. *Id.* at 915-16; *Terra Int'l*, 119 F.3d at 696 (concluding that the district court properly considered the following "interest of justice" factors: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.").

In this case, there does not appear to be any dispute, and there could not reasonably be any dispute in the circumstances of this case, that the Southern District of Illinois is a "district or division where [this action] might have been brought." 28 U.S.C. § 1404(a). Consideration of the factors that are relevant in this case weighs heavily in favor of transferring this action to that district, if my dismissals for lack of personal jurisdiction and improper venue are overturned. *In re Apple, Inc.*, 602 F.3d

at 912 (the court should consider "case-specific factors"); *Terra Int'l*, 119 F.3d at 691 (the court should determine what factors are relevant on a "case-by-case" basis).

More specifically, Gro Master's choice of this forum is entitled to little or no deference in this case, because neither party maintains its headquarters in this district; neither party has identified any witness who resides in this district; Farmweld has made only a single sale of an accused animal feeder here, while the vast majority of its sales and the development of the accused animal feeder were all in Illinois; and the only connection between this dispute and this forum is that Gro Master chose to file here. *Cf. id.* at 913. Although this forum may be slightly more convenient to Gro Master, even though both parties are foreign corporations, this forum is plainly less convenient to Farmweld—indeed, in the circumstances of this case, an intent to inconvenience Farmweld for a strategic advantage is the most likely reason for Gro Master's choice of this forum. Moreover, the convenience of witnesses weighs against this forum, because no party has identified any witnesses from Iowa, and the vast majority of Farmweld's witnesses would find a forum in Illinois much more convenient, and all or nearly all of Farmweld's documents are also more accessible in a forum in Illinois. *Id.* at 913-15. Thus, "convenience" warrants a transfer pursuant to § 1404(a).

So, too, does the "interest of justice." It is likely that the costs of litigating in this forum for Farmweld are so greatly increased over litigating in the Southern District of Illinois that they outweigh the reduction in costs of litigating in this forum that Gro Master might enjoy as compared to litigating in the Southern District of Illinois, particularly where both parties are strangers to this jurisdiction. *Id.* at 915-16. Gro Master's ability to compel the appearance of relevant witnesses and to enforce a judgment is plainly greater in a forum in Illinois, where Farmweld has property and accounts and all of its relevant witnesses, but Farmweld has no property, accounts, or witnesses in this forum. *Id.* Gro Master has also failed to support its contention that

33

this case could be brought to a conclusion more quickly in this district than in the Southern District of Illinois, where Farmweld has pointed to official statistics of the Administrative Office of the United States Courts suggesting that, if anything, the median time from filing to disposition is shorter in the Southern District of Illinois than it is in this district. *Id.* Also, in this case, I believe that another "case specific" factor going to the interest of justice is that this forum has no interest in resolving a dispute between strangers to the forum arising from circumstances that occurred almost entirely in another district. *Id.* at 912 (the court should consider "case-specific factors"); *Terra Int'l*, 119 F.3d at 691 (the court should determine what factors are relevant on a "case-by-case" basis). I believe that yet another "case specific" factor going to the "interest of justice" is that Gro Master should not benefit from what I believe is forum shopping, where a plainly more appropriate forum for this litigation is the Southern District of Illinois, where Farmweld has its principal place of business and nearly all of the allegedly infringing activity occurred, and both parties are strangers to this forum.

The relevant factors here favor transfer to the Southern District of Illinois pursuant to § 1404(a).

### 3.   *Summary*

If, and only if, my dismissal of this action is overturned, I hold, in the alternative, that this action should not be transferred to another district pursuant to § 1406(a), but that this action should be transferred, pursuant to § 1404(a), for the convenience of the parties and witnesses and in the interest of justice, to the United States District Court for the Southern District of Illinois.

## III.   CONCLUSION

I conclude that this is not a district in which personal jurisdiction over Farmweld would comport with due process, nor is it a proper venue under applicable law.

However, if these conclusions are overturned, I would, in the alternative, transfer this action to the Southern District of Illinois pursuant to § 1404(a).

THEREFORE, Farmweld's December 3, 2012, Motion To Dismiss Or, Alternatively, Motion To Transfer Venue (docket no. 19) is **granted**, as follows:

1.      The part of the motion seeking dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **granted**;

2.      The part of the motion seeking dismissal for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure is **granted**;

IN THE ALTERNATIVE, if, and only if, the dismissal of this action is overturned,

1.      The part of the motion seeking transfer of this action pursuant to 28 U.S.C. § 1406(a) is **denied**; but

2.      The part of the motion seeking transfer of this action pursuant to 28 U.S.C. § 1404(a) is **granted**, and this action is **transferred** to the United States District Court for the Southern District of Illinois for the convenience of the parties and the witnesses and in the interest of justice.

**IT IS SO ORDERED**.

**DATED** this 24th day of January, 2013.

_____

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA